IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HARISH MUSEBOYINA,<br><br>Plaintiff,<br><br>vs.<br><br>UR JADDOU, Director, U.S. Citizenship and Immigration Services, and ANTONY BLINKEN, Secretary, United States Department of State,<br><br>Defendants. | 4:22CV3169<br><br>MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND<br>REQUIRING BRIEFING ON SUBJECT MATTER JURISDICTION |

This case is before the Court on plaintiff Harish Museboyina's September 22, 2022, Motion for Temporary Restraining Order. Filing 15. Defendant Ur Jaddou, Director of the U.S. Citizenship and Immigration Services (USCIS),[1] filed an Objection to Plaintiff's Motion for a Temporary Restraining Order, Filing 19, on September 28, 2022, pursuant to an Order for an expedited response. Filing 17. In the same Order, the Court opined that, "[i]n this case, the issues are essentially legal, so the Court does not believe an evidentiary hearing is required." Filing 17 at 1. After reviewing both parties' submissions, the Court is convinced that this is true, so the Court has resolved the Motion for Temporary Restraining Order without an evidentiary hearing or oral arguments based on the parties' written submissions and the record as a whole. For the reasons stated below, Museboyina's Motion for Temporary Restraining Order is denied.

---

[1] Defendant Anthony Blinken has not been served with the Amended Complaint and has not appeared in this action.

1

## I. INTRODUCTION

### A. Background

Plaintiff Harish Museboyina is a citizen and national of India who maintains a residence in Portland, Oregon. Filing 14 at 2 (¶ 1).[2] He has an application for a permanent resident visa (I-485) pending with a "priority date" of September 27, 2013. Filing 16 at 7; Filing 18-2 at 1–2 (Nunez Decl., ¶ 5 (stating Museboyina's priority date). The Department of State (DOS) issues "visa bulletins" indicating the cut-off dates for visa applications in various categories and for various nationalities.[3] The parties agree that, based on Museboyina's "priority date" falling before the cut-off date at the time of his application, a visa was available to Museboyina in the EB-2 category[4] for a person whose country of origin is India. Filing 16 at 7; Filing 18-2 at 2 (Nunez Decl., ¶¶ 5–6). Museboyina's application was also current according to the September 2022 Visa Bulletin because the cut-off date for EB-2 applicants from India in that bulletin was December 1, 2014. Filing 14 at 15 (¶ 94); Filing 18-3 at 4. His application is still pending. Filing 18-2 at 2 (¶ 6).

On September 6, 2022, the United States Citizenship and Immigration Service (USCIS) issued a memo stating in pertinent part the following:

> **Effective immediately, Tuesday, September 6, 2022, no further authorizations will be made in response to requests for Employment First (EB-1) or Employment Second (EB-2) [visa] numbers for the remainder of FY 2022.**

---

[2] Citations to most documents filed in this case will are to docket number and docket page number (*e.g.*, Filing 16 at 19). Citations to the Amended Complaint are to docket number, docket page number, and document paragraph number (*e.g.*, Filing 14 at 2 (¶ 1)).

[3] *See generally* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html. Pursuant to 8 U.S.C. § 1153(g), DOS makes estimates as to the demand for visas for the various categories and nationalities and, after that point, establishes final action dates in the Visa Bulletin to avoid exceeding the statutory caps. Filing 18-1 at 5 (Parker Decl. ¶ 12).

[4] The EB-2 category is members of professions holding advanced degrees or of exceptional ability. 8 U.S.C. § 1153(b); Filing 18-1 (Parker Decl., ¶ 4).

> This action is a direct result of the maximum level of [visa] numbers which may be made available for use on a Worldwide basis for EB-1 and EB-2 applicants during FY 2022 having been reached.

Filing 14-2 at 1 (emphasis in the original). The October 2022 Visa Bulletin, which Museboyina asserts was issued the next day, indicates that the priority date for the EB-2 preference category for applicants chargeable to India will "retrogress" to April 1, 2012. Filing 18-4 at 4. Thus, as of the start of Fiscal Year 2023 (FY2023) on October 1, 2022, Museboyina's application cannot be approved because the cut-off date is before his priority date of September 27, 2013.

### B. The Parties' Arguments

Museboyina asks the Court for a Temporary Restraining Order (TRO) to "restrain, enjoin, and invalidate Defendants' Retrogression Policies," Filing 16 at 19, "to ensure [he] remain[s] eligible for adjustment of status [to permanent resident] when fiscal year 2023 immigrant visas become available," Filing 16 at 1. He contends that these "Retrogression Policies" defy congressional intent, and as of October 1, 2023, will unfairly deprive him of his priority date for his application for a visa for permanent resident status and delay adjudication of that application, possibly for years. Filing 16 at 4–5. Museboyina bases much of his argument on 8 U.S.C. § 1255(a) and (b), which he argues require that he have a visa immediately available only at the time of application, not at the time of approval. Filing 16 at 9–10.

The Director argues that visa "retrogression" is based on the strict statutory limits imposed by Congress on the number of visas that may be allocated each fiscal year in particular categories to applicants of particular nationalities, but it is not "a policy." Filing 19 at 3. Furthermore, the Director argues that retrogression is used by DOS and USCIS to maintain, not defy, congressional intent regarding immigrant visa allocation within congressionally prescribed numerical limitations. Filing 19 at 5. The Director also disputes Museboyina's reading of § 1255, arguing

3

that § 1255(b) makes clear that a visa must be available upon approval of an application. Filing 19 at 10.

## II. LEGAL ANALYSIS OF THE TRO REQUEST

### A. Standards for a TRO

Rule 65 of the Federal Rules of Civil Procedure provides, in pertinent part, "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(b)(1). Rule 65(b)(1) imposes significant requirements for a TRO issued without notice. Fed. R. Civ. P. 65(b)(1)(A)–(B); *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (noting that there is a material difference between a TRO and a preliminary injunction in the allowed duration and the requirement of notice). In this case, however, the Director had notice of Museboyina's request for a TRO, the Court has required the Director's response, and both parties are represented by counsel. Nevertheless, the Court will assume that any TRO issued in this instance will still need to adhere to the durational limits of Rule 65(b).

Rule 65(b) does not identify the standard the Court must apply in deciding whether or not to grant a request for a TRO. "[T]he standard for analyzing a motion for a temporary restraining order is the same as [the standard for] a motion for a preliminary injunction." *Tumey*, 27 F.4th at 665. Thus, to obtain either a TRO or a preliminary injunction, "'[a] plaintiff . . . must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Tumey*, 27 F.4th at 664 (bracketed numbers inserted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and also citing *Dataphase Sys., Inc.*

v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).[5] No single factor is dispositive. Id. at 665. Furthermore, a TRO is an extraordinary remedy never awarded as of right; the primary function of a TRO is preserving the status quo until the district court has an opportunity to grant full effective relief; and requiring a non-movant to take affirmative action goes beyond the purpose of a TRO. Id. Lastly, the burden of establishing the propriety of a TRO is on the movant. Id.

### B. Application of the Standards

As a prefatory matter, the Court finds that the relief Museboyina seeks cannot properly be granted in a TRO. Museboyina seeks a dramatic alteration of the status quo, not maintenance of it, by setting aside the agencies' decades-long system of visa allocation affecting all immigrant visa applicants. See Tumey, 27 F.4th at 665. Museboyina also seeks an order for affirmative action by the Director to ensure he remains eligible for a visa in fiscal year 2023, which is also not the proper purpose of a TRO. See id. Nevertheless, the Court will consider the Winter factors as well. In this case, the Court finds that the first and second Winter factors are dispositive of Museboyina's request for a TRO. The remaining factors do not change that disposition, so the Court will not explicitly consider them.

> 1. *Museboyina Cannot Show Likelihood of Success Where His Interpretation is Contrary to Plain Statutory Language and Leads to Absurd Results*

The Eighth Circuit Court of Appeals has stated "that '[w]hile no single factor is determinative, the probability of success factor is the most significant.'" Tumey, 27 F.4th at 665

---

[5] Courts in this Circuit have for decades called the considerations for determining whether to grant a TRO or a preliminary injunction the "*Dataphase* factors," set out in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109 (8th Cir. 1981) (en banc). The much more recent statements of the pertinent considerations by the Supreme Court in *Winter* and by the Eighth Circuit Court of Appeals in *Tumey*, while identifying the same considerations, give them sufficiently different definition to warrant reference to the "*Winter* factors" rather than the "*Dataphase* factors." Compare Winter, 555 U.S. at 20 (as quoted in the body of this decision), with Dataphase, 640 F.2d at 114 ("[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.").

(quoting *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020) (cleaned up)). This factor requires the movant to demonstrate "at least a 'fair chance of prevailing.'" *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022) (quoting *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1041 (8th Cir. 2016)). The likelihood of success is considered in light of the elements of the movant's claim. *See, e.g., 301, 712, 2103 & 3151 LLC v. City of Minneapolis*, 27 F.4th 1377, 1383 (8th Cir. 2022) (analyzing likelihood of success in light of the elements of the movant's "takings" claim).

Museboyina asserts that his claim is pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), which gives courts authority to compel agency action if the agency unlawfully withholds agency action. Filing 16 at 8. He argues that the agencies are unlawfully withholding approval of his visa application because of the Retrogression Policies, contrary to the text, structure, and history of 8 U.S.C. § 1255(a), which he argues reveal that an immigrant visa does not have to be immediately available at the time of adjudication or approval, only at the time of application. Filing 16 at 9. He then argues that 8 U.S.C. § 1255(b) assumes that, if there is an application for adjustment of status filed, there will be a visa number available for the applicant because Congress only requires an immigrant visa number to be available at filing, not at approval. Filing 16 at 10.

Setting aside for the moment the Court's questions about the applicability of § 706(1) of the APA, *see Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 461–62 (8th Cir. 2018) (explaining that courts have limited authority to review whether agency action has been "unlawfully withheld or unreasonably delayed," the operative words in § 706(1)), the Court finds Museboyina's interpretation of § 1255(a) and (b) to be so flawed that he has no likelihood of success on the merits. *Tumey*, 27 F.4th at 665. Section 1255(a) expressly provides that the Attorney

6

General may adjust the status of an alien to permanent resident if *inter alia* "an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).[6] Thus, this statute plainly states prerequisites to adjustment of status, including the availability of a visa at the time the application is filed, but it says nothing about whether a visa must be available at the time an application is approved. Because this language is plain and unambiguous, the Court's analysis begins and ends there. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (internal quotation marks and citations omitted)). Just as plainly and unambiguously, § 1255(b) requires that a visa be available at the time of approval of an application, because when an application is approved, "the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then

---

[6] The first two subsections of § 1255, of § 1255, which is captioned "Adjustment of status of nonimmigrant to that of person admitted for permanent residence," provide as follows:

**(a) Status as person admitted for permanent residence on application and eligibility for immigrant visa**

The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

**(b) Record of lawful admission for permanent residence; reduction of preference visas**

Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current.

8 U.S.C. § 1255(a)–(b).

current." 8 U.S.C. § 1255(b). The Secretary obviously could not make such a reduction in the number of preference visas authorized if they are not available.

Thus, neither the supposed "retrogression policies" nor any other action of the agencies is responsible for the requirement that a visa must be available at the time an application is approved as well as at the time the application is made. Consequently, the agencies have not "unlawfully withheld" a decision when no visas are available at the time of approval. 5 U.S.C. § 706(1).

Furthermore, Museboyina's interpretation of § 1255 as prohibiting "retrogression" is absurd. See *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). That interpretation conflicts with limitations on visa number usage requirements by compelling the agencies to grant a visa to every applicant who had a visa available at the time of application, even if the allocated visas have run out before approval. It would also result in loss of visas that could be issued to qualified applicants if a visa had to be allocated to an application when filed, because applications that did not result in approval after the end of the fiscal year could not be reallocated to another application. Museboyina's interpretation would also mean that where the adjudication of an application spans more than one fiscal year, the visa could be charged to two years, once at filing and once at approval, resulting in the loss of one otherwise available visa. Congress has expressly directed the DOS to make "reasonable estimates" of the anticipated number of visas to be issued and to rely upon such estimates in authorizing the issuances of visas. 8 U.S.C. § 1153(g). "Retrogression" serves the statutory goals of controlling the number of visas issued annually.

Thus, Museboyina has no likelihood of success on the merits of his claim.

*2. Museboyina Cannot Show a Threat of Irreparable Harm Where He Retains His Current Status and Privileges*

The second *Winter* factor the Court will expressly consider is whether it is likely that Museboyina will suffer irreparable harm in the absence of a TRO. *Tumey*, 27 F.4th at 664. The movant must show that "irreparable injury is *likely* in the absence of an injunction, not merely a 'possibility' of irreparable harm before a decision on the merits can be rendered." *Id.* at 664–65 (quoting *Winter*, 555 U.S. at 20). "The failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Museboyina cannot show irreparable harm is likely in the absence of a TRO. *Tumey*, 27 F.4th at 664.

Although Museboyina's application cannot be approved at this time, the Court finds that, contrary to his contentions, Filing 16 at 5, his I-485 application remains pending, and he maintains his position in the queue of immigrants in his category and with his country of origin based on his priority date. Filing 18-1 at 8 (Nunez Decl., ¶ 16). Museboyina will be permitted to stay in the United States if otherwise eligible, pursuant to 8 U.S.C. § 1255(c)(2) and 8 C.F.R. § 245.2(a)(5). He has a valid Form I-765, employment authorization document that is valid through August 8, 2024, and he is eligible to apply for renewal of his employment authorization document. Such employment authorization permits employment with any U.S. employer. 8 C.F.R. § 274a.12(c)(9); Filing 18-2 at 2 (Nunez Decl., ¶ 7). Museboyina remains eligible to apply for travel authorization to depart and return to this country without affecting his pending adjustment of status applications. 8 C.F.R. § 245.2(a)(4)(ii); Filing 18-2 at 2 (Nunez Decl., ¶ 7). As a principal applicant, Museboyina has flexibility under 8 U.S.C. § 1154(j) to request to change jobs or employers to the same or a similar occupation without having to obtain a new labor certification or having to file

9

another immigrant petition. Finally, Museboyina is eligible to seek regular renewals of his employment and travel authorization documents without paying a filing fee. 8 C.F.R. §§ 103.7(b)(1)(i)(M)(4) & 103.7(b)(1)(i)(II) (Jan. 1, 2020); Filing 18-1 at 11–12 (Parker Decl., ¶ 25). In short, he retains his current status and privileges.

The Court understands that the delay in receiving a visa is "disheartening," Filing 16 at 6, but it is not clear that such delay is the result of "retrogression" rather that the lack of an available visa. It is pure speculation to assume that, but for the lack of available visas in September 2022, Museboyina's application would have been approved—or even adjudicated. Furthermore, the Court is not at all convinced that delay in receiving a benefit to which Museboyina has not demonstrated he is entitled is a "harm," let alone an irreparable one. Museboyina's "harm" in not receiving a visa is reparable when his priority date is again current and his application is approved.

Thus, Museboyina fails to show irreparable harm, which is independently sufficient to deny his request for a TRO. *Sessler*, 990 F.3d at 1156. Accordingly, Museboyina's Motion for Temporary Restraining Order is denied.

### III. A FURTHER ISSUE

The Court raises the issue of subject matter jurisdiction *sua sponte*. In this case, Museboyina filed his original Complaint in this matter on August 19, 2022. Filing 1. In that original Complaint, he asserted a single claim of "unreasonable delay on Form I-485" under the APA, 5 U.S.C. §§ 555(b), 706. The primary relief he sought was an order compelling USCIS to make a decision on his adjustment of status application within 30 days but in no case later than September 30, 2022. Filing 1 at 22 (¶ 158). He also filed a Motion for Preliminary Injunction seeking an order enjoining "the Executive's arbitrary delays and improper legal analysis to protect Plaintiff from the Agency's Visa Regression Policy and to allow them to get decisions on their lawful permanent residency applications." Filing 3 at 2. He then filed an Amended Motion for

10

Preliminary Injunction on August 29, 2022, asking the Court to order the Defendant to "record the alien's lawful admission for permanent residence" under 8 U.S.C. § 1255(b)." Filing 7 at 1. In the alternative, he asked the court to "enjoin the Defendant's Regression Policy for the duration of this case" and "to enter an order 'reserving' a sufficient number of immigrant visas now available for issuance at the end of this case if the Plaintiffs prevail." Filing 7 at 1. The Director moved to dismiss Museboyina's original Complaint for lack of subject matter jurisdiction. Filing 11. The Director asserted that there is no longer a live case or controversy as to whether USCIS can approve Museboyina's I-485 Application because USCIS has issued all the available visas for fiscal year 2022. Filing 13 at 1.

Instead of resisting the Director's Motion to Dismiss, Museboyina filed the Amended Complaint now before the Court. Filing 14. The Amended Complaint asserts three causes of action: a "USCIS unlawful withholding" claim based on 5 U.S.C. § 706(1), Filing 15 at 18 (¶¶ 110–118); a "DOS unlawful withholding" claim based on 5 U.S.C. § 706(a), Filing 14 at 19 (¶¶ 119–126); and an "unreasonable delay on Form I-485" claim based on 5 U.S.C. § 555(b), mirroring the only claim in the original Complaint, Filing 14 at 20–31 (¶¶ 127–207). Filing an Amended Complaint as a matter of course pursuant to Rule 15(a)(1)—as Museboyina did in this case—ordinarily moots a Rule 12(b) motion filed prior to the amendment. The Director has not yet renewed her challenge to subject matter jurisdiction as to the Amended Complaint. Nevertheless, the Court is not convinced that it has subject matter jurisdiction over either Museboyina's reiterated claim or his new claims.

"It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States,* 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility 'to consider *sua sponte* [the court's

subject matter] jurisdiction . . . where . . . [the court] believe[s] that jurisdiction may be lacking." *Id.* (quoting *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam) (alterations in original).

The Court has several concerns with subject matter jurisdiction over Museboyina's case. Museboyina alleges, (1) "This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977)," Filing 14 at 2 (¶ 4); (2) "Under its federal question jurisdiction, this Court can hear claims under the Administrative Procedure Act (5 U.S.C. § 501, et seq.) ('APA')," Filing 14 at 2 (¶ 5); and (3) "Under its federal question jurisdiction, this Court can also provide declaratory relief under 28 U.S.C. § 2201," Filing 14 at 2 (¶ 7). The first problem is that "an agency's mere failure to act is usually not a final agency action triggering judicial review, and the Supreme Court has declared that the APA does not 'afford an implied grant of subject-matter jurisdiction.'" *Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 462 (8th Cir. 2018) (quoting *Califano v. Sanders*, 430 U.S. 99, 105-06, 107 (1977)). Although there may be mandamus jurisdiction under the All Writs Act, *see id.*, that also is not at all clear. These authorities undermine Museboyina's first two bases for federal jurisdiction. Next, "the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988), does not provide an independent basis for federal jurisdiction." *Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles Cnty., Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992). This authority undermines Museboyina's third basis for federal jurisdiction.

Furthermore, § 701(a) of the APA deprives a court of power to review agency action where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Also, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Org. for Competitive Markets*, 912 F.3d at 462 (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64

12

(2004), with emphasis in original). It is not clear to the Court that Museboyina is challenging a "discrete agency action" or, in light of the Court's interpretation of § 1255, that there is any action Museboyina is challenging that the agencies are "required to take." *Id.* Similarly, 8 U.S.C. § 1252, a provision of the Immigration and Nationality Act (INA), appears to strip courts of authority for judicial review of various kinds of actions involving aliens, including actions under 8 U.S.C. § 1255. The parties have not so far addressed the applicability, if any, of § 1252 to Museboyina's claims.

Finally, the Court believes that the Director's original "case or controversy" challenges to subject matter jurisdiction may have validity as to the reiterated claim in the Amended Complaint. That challenge or other Article III subject matter jurisdiction challenges may also apply to Museboyina's new claims.

Under these circumstances, the Court is unwilling to proceed without a full factual investigation of its subject matter jurisdiction in this case. *See Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018) (distinguishing between "factual" and "facial" challenges to subject matter jurisdiction). Consequently, the Court will require the parties to submit briefs and evidence, if required, on subject matter jurisdiction. *See Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (explaining that the court may receive evidence via "any rational mode of inquiry" on the issue of subject matter jurisdiction and the parties may "request an evidentiary hearing"). Because the plaintiff bears the burden of proving the existence of subject matter jurisdiction, *id.*, the Court will allow Museboyina the first opportunity to brief the issue.

## IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

13

1. plaintiff Harish Museboyina's September 22, 2022, Motion for Temporary Restraining Order, Filing 15, is denied; and

2. the Court establishes the following briefing schedule on the question of subject matter jurisdiction:

    a. plaintiff Museboyina shall have to and including October 14, 2022, to submit a brief and evidence on the issue of the Court's subject matter jurisdiction over this action;

    b. the Director shall have to and including October 28, 2022, to submit a responsive brief and evidence;

    c. plaintiff Museboyina shall have to and including November 4, 2022; and

    d. the Court believes these matters can be addressed through written submissions and evidence; if either party believes an evidentiary hearing is necessary, that party must make such request in its briefing and state with specificity why an evidentiary hearing is necessary.

IT IS FURTHER ORDERED that plaintiff Museboyina's August 19, 2022, Motion for Preliminary Injunction, Filing 3, his August 29, 2022, Amended Motion for Preliminary Injunction, Filing 7, and the Director's September 12, 2022, Motion To Dismiss, Filing 11, are both denied without prejudice.

Dated this 30th day of September, 2022.

                                              BY THE COURT:

                                              s/ *Brian C. Buescher*
                                              United States District Judge