IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HARISH MUSEBOYINA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>UR JADDOU, Director, U.S. Citizenship and Immigration Services; and ANTONY BLINKEN, Secretary, United States Department of State,<br><br>                    Defendants. | **4:22CV3169**<br><br><br>**MEMORANDUM AND ORDER ON SUBJECT MATTER JURISDICTION** |

Plaintiff Harish Museboyina, a citizen and national of India residing in Portland, Oregon, brought suit against defendants Ur Jaddou, the Director of the U.S. Citizenship and Immigration Service (USCIS), and Anthony Blinken, the Secretary of the United States Department of State (DOS). Museboyina's claims arise from allegedly unreasonable delays in the adjudication of his employment-based "adjustment of status" application for permanent residency, Form I-485, and from Defendants' "Retrogression Policies" that determine the cut-off date to be eligible to apply for permanent residency.[1] For the reasons stated below, the Court finds that it lacks subject matter jurisdiction over Museboyina's claims and dismisses this action without prejudice but without leave to amend.

---

[1] *See* USCIS, Visa Retrogression, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression.

1

# I.  INTRODUCTION

## A.  Factual Background[2]

As relevant to this ruling, Museboyina alleges that he is a citizen and national of India currently in lawful H-1B non-immigrant status and that he has been living in the United States for fourteen years. Filing 14 at 2 (¶ 1), 13 (¶¶ 74–75). His employer filed an immigrant visa application for him with USCIS on September 27, 2013, which makes that date his "priority date" for his immigrant visa and all subsequent visas. Filing 14 at 13–14 (¶¶ 76–78); Filing 18-2 at 2 (Nunez Decl., ¶¶ 5–6). The importance of that "priority date" will be addressed below.

The Court notes that the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537, governs how noncitizens obtain visas to enter and permanently reside in the United States. The INA has been amended at various times as Congress adjusted the worldwide limits on immigration. *See, e.g.*, Immigration Act of 1990, Pub. L. 101-649. These limits include numerical limits worldwide, 8 U.S.C. § 1151; limits per-country for certain countries to which an applicant may be "chargeable" (typically the country of birth), 8 U.S.C. § 1152; and limits on various preference categories, including employment-based categories, 8 U.S.C. § 1153. Museboyina filed a Form I-485 for permanent residency on October 14, 2014, which USCIS accepted and assigned to the Nebraska Service Center. Filing 14 at 14 (¶¶ 84–85). Museboyina's employment-based category is currently EB-2, Filing 14 at 14 (¶ 79), and his chargeable country is India, Filing 14 at 1.

---

[2] For the reasons set out in more detail in Section II.A., the Court concludes that Defendants are mounting a "factual" attack on the Court's subject matter jurisdiction, so the Court may look to evidence outside the pleadings and make factual findings. *See Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018))). All of the documents submitted as Defendants' Index in support of their Motion to Dismiss, Filing 30, are cross-referenced to their Index in support of their Opposition to Plaintiff's Motion for Temporary Restraining Order, Filing 18. In addition, Defendants included an index with their Reply consisting of two additional documents. Filing 42.

2

For an adjustment of status application to be approvable, a visa number must be available both at the time the applicant files the adjustment of status (I-485) application and at the time when USCIS adjudicates that application. *See* 8 U.S.C. §§ 1255(a) & (b) (requiring that the applicant be eligible "to receive an immigrant visa" and directing DOS to reduce by one the number of visas available upon approval of an adjustment application for the fiscal year then current); 8 C.F.R. §§ 245.1(g) & 245.2(a)(2)(i)(A)-(C); *see also* ECF 18-1 at 4–5 (Parker Decl.) (explaining the application of priority dates in relation to USCIS's ability to approve adjustment of status applications). DOS's Bureau of Consular Affairs publishes a monthly Visa Bulletin that sets forth visa availability for each preference category by chargeable country. *See* U.S. Dep't of State – Bureau of Consular Affairs, Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html. An application is "current"—meaning that a visa is available—for an applicant in a specific preference category and chargeable country if the applicant's "priority date" is earlier than the cut-off date in the Visa Bulletin. *See* "When to File Your Adjustment of Status Application for Family-Sponsored or Employment-Based Preference Visas: June 2022," https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/when-to-file-your-adjustment-of-status-application-for-family-sponsored-or-employment-based-77. The Visa Bulletin includes charts showing the availability of visas by preference category for chargeable countries. For example, the Visa Bulletin for September 2022 shows a cut-off date of December 1, 2014, for EB-2 applicants chargeable to India. Filing 18-3 at 4. Thus, as of the beginning of September 2022, Museboyina's I-485 Application was current because the cut-off date for EB-2 applicants from India was after his "priority date" of September 27, 2013. Filing 14 at 15 (¶ 94); Filing 18-3 at 4. Museboyina's application is still pending. Filing 18-2 at 2 (¶ 6).

3

Unfortunately for Museboyina, on September 6, 2022, USCIS issued a memo directing that no further visa authorizations be made in response to EB-1 or EB-2 visa numbers for the remainder of Fiscal Year 2022. Filing 14-2 at 1. No further visas could be authorized because the maximum level of visa numbers that can be made available for use on a worldwide basis for applicants in EB-1 and EB-2 categories during FY 2022 had been reached. Filing 14-2 at 1. The October 2022 Visa Bulletin, which Museboyina asserts was issued the next day, indicates that the priority date for the EB-2 preference category for applicants chargeable to India "retrogressed" to April 1, 2012. Filing 18-4 at 4. Thus, as of the start of FY 2023 on October 1, 2022, Museboyina's application could not be approved because the cut-off date was before his priority date of September 27, 2013. *See* 8 U.S.C. §§ 1255(a) & (b); *see also* Filing 42-1 at 4 (November 22 Visa Bulletin again showing the pertinent cut-off date to be April 1, 2012); Filing 42-2 at 4 (December 2022 Visa Bulletin showing the pertinent cut-off date had retrogressed further to October 8, 2011).

### B. Procedural Background

Museboyina filed both an original Complaint and a Motion for Preliminary Injunction when he initiated this lawsuit. Filing 1; Filing 3. Shortly after that, he filed an Amended Motion for Preliminary Injunction. Filing 7. Defendants filed a Motion to Dismiss challenging the Court's subject matter jurisdiction, but that Motion was rendered moot by the filing of Museboyina's First Amended Complaint. Filing 14. In his First Amended Complaint, Museboyina states that he seeks "two primary orders: (1) an order restraining, enjoining, and invalidating Defendants' Retrogression Policies and (2) an order compelling final agency action on Plaintiffs' adjustment of status applications." Filing 14 at 1 (preamble). More specifically, Museboyina's first and second causes of action allege that USCIS and DOS, respectively, are unlawfully withholding agency action on his I-485 Application in violation of the Administrative Procedures Act (APA), 5 U.S.C. § 706(1), because Defendants' "Retrogression Policy" contravenes congressional intent. Filing 14

4

at 18; Filing 14 at 19. His third cause of action, which appears to be against USCIS only, alleges unreasonable delay in making a decision on his Form I-485 Application in violation of the APA, making USCIS's delay arbitrary and capricious, citing 5 U.S.C. §§ 555(b), 706. Filing 14 at 20–31. Museboyina prays for various kinds of declaratory and injunctive relief as well as reasonable attorney's fees and costs.[3]

The same date Museboyina filed his First Amended Complaint, he also filed a Motion for Temporary Restraining Order. Filing 15. Museboyina sought a Temporary Restraining Order (TRO) to "restrain, enjoin, and invalidate Defendants' Retrogression Policies," Filing 16 at 19, "to ensure [he] remain[s] eligible for adjustment of status [to permanent resident] when fiscal year 2023 immigrant visas become available," Filing 16 at 1. However, after reviewing the parties' briefing the Court denied Museboyina's Motion for Temporary Restraining Order. Filing 18 at 14.

---

[3] Museboyina seeks the following relief:

209. Declare USCIS's Retrogression Policy unlawful, ultra vires, or arbitrary and capricious and restrain, enjoin, or invalidate it;

210. Enjoin USCIS from applying its Retrogression Policies to Plaintiffs;

211. Declare DOS's Retrogression Policy unlawful, ultra vires, or arbitrary and capricious and restrain, enjoin, or invalidate it;

212. Enjoin DOS from applying its Retrogression Policies to Plaintiffs;

213. Declare USCIS's delays described above in adjudication of the adjustment of status petitions unreasonable;

214. Enter an order compelling USCIS to make a decision on Plaintiff's adjustment of status applications within 30 days, and if the Agency issues a request for additional evidence, order the Agency to make a final decision thereon within 30 days of its receipt of the Plaintiff's response to the request for evidence;

215. To the extent necessary to maintain jurisdiction over this case and to afford meaningful relief, under the All Writs Act, the APA, or any other provision of law, compel USCIS to request and acquire a visa number from the State Department for each Plaintiff prior to September 30, 2022; hold that visa number available for each Plaintiff until USCIS adjudicates each Form I-485; and issue the Plaintiff lawful permanent residence *nunc pro tunc* to September 30, 2022;

216. Order Defendant to pay reasonable attorney's fees and costs under the Equal Access to Justice Act or another provision of law; and

217. Enter and issue other relief that this Court deems just and proper.

Filing 14 at 31–33 (¶¶ 209–217).

Museboyina then filed an interlocutory appeal of the Court's denial of his Motion for Temporary Restraining Order. Filing 23.

In the same Order in which the Court denied Museboyina's Motion for Temporary Restraining Order, the Court raised questions about its subject matter jurisdiction over Museboyina's First Amended Complaint and established a briefing schedule on that question. Filing 22 at 14. Shortly thereafter, Defendants challenged the Court's subject matter jurisdiction in a Motion to Dismiss Museboyina's Amended Complaint. Filing 29. Briefing on the Court's subject matter jurisdiction in response to both the Court's Order and Defendants' Motion is now complete. *See* Filing 31; Filing 32; Filing 35; Filing 36; Filing 41.

## II.   LEGAL ANALYSIS

### A.  Threshold Matters

This case requires the Court to consider some threshold matters before deciding whether it has subject matter jurisdiction over Museboyina's claims. These issues include whether the Court can even decide the question of subject matter jurisdiction while denial of Museboyina's Motion for Temporary Restraining Order is on interlocutory appeal; the standards for challenges to subject matter jurisdiction; whether the present challenge is "facial" of "factual"; and the dispositive subject matter jurisdiction principle in this case.

*1.     This Court Can Decide Its Subject Matter Jurisdiction Despite the Interlocutory Appeal*

The first question the Court must address is whether it has jurisdiction to decide its subject matter jurisdiction over this action despite the pending interlocutory appeal. Generally, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal*." *Chambers v. Pennycook*, 641 F.3d 898, 903 (8th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56,

58 (1982) (per curiam) (emphasis added by the appellate court)). Because the issue of subject

matter jurisdiction was raised but not resolved in the Court's denial of the Motion for Temporary

Restraining Order, subject matter jurisdiction is not an "aspect[ ] of the case involved in the

appeal," and the Court retains jurisdiction to rule on that issue. *Id.*

    *2.    Standards for Challenges to Subject Matter Jurisdiction*

Because the Court can consider the subject matter jurisdiction issue, it turns next to the

applicable standards. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-

answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The

Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter
> jurisdiction," and we may look at materials "outside the pleadings" in conducting
> our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en
> banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th
> Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn
> v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the
> court's duty to "decide the jurisdictional issue, not simply rule that there is or is not
> enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's
> inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary
> judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any
> rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.*
> at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)).
> Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound
> up with the merits that a full trial on the merits may be necessary to resolve the
> issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein*

*Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack

of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's

jurisdiction, and courts may look to evidence outside the pleadings and make factual findings."

(citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to

Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id*. If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc*., 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

### 3.    The Challenge Here is "Factual" Not Merely "Facial"

In its Order raising the subject matter jurisdiction issue, the Court stated that under the circumstances presented "the Court is unwilling to proceed without a full factual investigation of its subject matter jurisdiction in this case." Filing 22 at 13 (citing *Croyle*, 908 F.3d at 380–81). Consequently, the Court set a briefing schedule for the parties "to submit briefs and evidence, if required, on subject matter jurisdiction." Filing 22 at 13, 14 (setting the schedule to submit briefs and evidence). In support of their Motion to Dismiss, Defendants assert, "In the present case, Defendants are bringing a factual attack against Plaintiff's assertion of subject matter jurisdiction in his Amended Complaint." Filing 31 at 12. Defendants also attach to their Motion and Reply in support of that motion indices of documents they ask the Court to consider. Filing 30; Filing 42.

Under these circumstances, where the Court called for and Defendants submitted evidence outside of the pleadings to decide the subject matter jurisdiction issue, the Court concludes that what is at issue is a full "factual" determination of subject matter jurisdiction. *Croyle*, 908 F.3d at 380-81 (explaining that the appellate court is bound by the district court's characterization of the motion as a facial or factual challenge); *see also Buckler*, 919 F.3d at 1044 (explaining that on a Rule 12(b)(1), if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule

8

56 summary judgment standards, and the court may receive evidence via "any rational mode of inquiry"). This is so, even though neither party has requested an evidentiary hearing. *See Buckler*, 919 F.3d at 1044 (explaining that a party may request an evidentiary hearing on a Rule 12(b)(1) motion). Under these circumstances, Museboyina is not entitled to Rule 12(b)(6) "safeguards." *Croyle*, 908 F.3d at 380.

    4.    *The Dispositive Principle*

Defendants' challenge to subject matter jurisdiction over Museboyina's original Complaint—mooted by the filing of Museboyina's First Amended Complaint—was that there is no longer a live case or controversy as to whether USCIS can approve Museboyina's I-485 Application when USCIS has issued all the available visas for this fiscal year. Filing 13 at 1. When the Court thereafter resurrected the subject matter jurisdiction issue, the Court acknowledged that Defendants' original "case or controversy" challenges might be valid. Filing 22 at 13. However, the Court also raised several concerns with Museboyina's alleged bases for subject matter jurisdiction. Filing 22 at 12–13.

In their Motion to Dismiss Museboyina's First Amended Complaint, Defendants reiterate their earlier position that there is no longer a live case or controversy as to whether USCIS can approve Museboyina's I-485 Application because DOS has issued all the available employment-based EB-2 preference visas for fiscal year 2022. Filing 31 at 1–2. In their response to the Court's Order for briefing on subject matter jurisdiction, Defendants argue among other things that this Court lacks subject matter jurisdiction over Museboyina's Amended Complaint on account of mootness and lack of standing owing to the events that have occurred after the Amended Complaint was filed. Filing 36 at 13–14. In Museboyina's brief in response to the Court's Order, Museboyina does not address Defendants' "case or controversy" challenge to subject matter jurisdiction. Filing 32. Instead, he focuses on his argument that his claim is reviewable pursuant

to the APA. Filing 32 at 1–4. He then focuses on his contention that 8 U.S.C. § 1252(a) does not preclude such review. Filing 32 at 5–9. In his brief in opposition to Defendants' Motion to Dismiss, however, Museboyina does argue—albeit fleetingly—that his claim is not moot. Filing 35 at 1. Museboyina never addresses other "case or controversy" issues.

"Article III of the Constitution limits [federal courts'] consideration to cases and controversies existing throughout all stages of litigation." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 726 (8th Cir. 2022) (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016), and U.S. CONST. art. III, § 2, cl. 1). After reviewing the parties' briefing, the Court now finds that the "case or controversy" requirement is the dispositive principle of subject matter jurisdiction in this case. Consequently, the Court finds it unnecessary to reach any of the other issues of subject matter jurisdiction raised by the parties.

### B.  There Is No Live Case or Controversy to Sustain Subject Matter Jurisdiction Over This Case

The Court begins its analysis of the dispositive "case or controversy" requirement with a summary of the parties' arguments.

#### 1.    *The Parties' Arguments*

In their Motion to Dismiss Museboyina's First Amended Complaint, Defendants reiterate their earlier position that there is no longer a live case or controversy as to whether USCIS can approve Museboyina's I-485 Application because DOS has issued all the available employment-based EB-2 preference visas for fiscal year 2022. Filing 31 at 1–2. Defendants argue that neither USCIS, nor DOS, nor the Court can issue visas contrary to limits set by Congress in 8 U.S.C. §§ 1151–1153. Filing 31 at 2, 17–18. Thus, Defendants argue that Museboyina's claims are moot. Filing 31 at 16. They also argue that Museboyina lacks standing to pursue his claims because he cannot show a concrete and particularized injury—that is, that his I-485 Application would have

10

been adjudicated if the EB-2 visa numbers had not been exhausted before the end of FY 2022. Filing 31 at 16. Defendants argue that USCIS and DOS are not responsible for any alleged injury from following statutory requirements. Filing 31 at 17. They argue further that Museboyina cannot show that any injury alleged can be redressed by a favorable judicial decision where there are no available visas. Filing 31 at 18.

In his brief in opposition to Defendants' Motion to Dismiss, Museboyina makes his only argument concerning the "case or controversy" requirement, but that argument is limited to the question of "mootness." Filing 35 at 1. He argues that his claim is not moot because he is not seeking a visa just from FY 2022 but from any fiscal year. Filing 35 at 1. He concedes only that his request for a visa number by September 30, 2022, is moot. Filing 35 at 1. He contends his other claims are not moot, because Defendants have not issued a final decision on his application. Filing 35 at 1. Museboyina makes no mention of the "case or controversy" or "standing" requirements for subject matter jurisdiction.

In their response to the Court's Order for briefing on subject matter jurisdiction, Defendants assert mootness and lack of standing owing to the events that have occurred after the Amended Complaint was filed. Filing 36 at 13–14. They reiterate arguments they asserted in support of their first and second Motions to Dismiss, so the Court will not reiterate them. In their Reply in further support of their Motion to Dismiss, Defendants note Museboyina's concession that his request for a visa to be allocated to him by September 30, 2022, is moot. Filing 41 at 1. Defendants then reiterate that Museboyina's claims in the First Amended Complaint are moot in their entirety because visas for the EB-2 employment-based category for India remain unavailable. Filing 41 at 1.

2.      The Requirements for a "Case or Controversy"

The concepts of "standing" and "mootness" are intertwined with the "case or controversy" principle of subject matter jurisdiction. "Standing" is "rooted in the traditional understanding of a case or controversy." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Article III standing . . . presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601 (8th Cir. 2022) (quoting *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019)). Similarly, "a case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Davis v. Morris-Walker, LTD*, 922 F.3d 868, 870 (8th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Indeed, "[s]tanding is '[a] close cousin of mootness.'" *Religious Sisters*, 55 F.4th at 604 n.13 (quoting *Noem v. Haaland*, 41 F.4th 1013, 1017 (8th Cir. 2022)). "[T]he difference between standing and mootness is merely one of 'time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Id*. at 604 n.13 (quoting *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021)). "[I]f there is an ongoing dispute giving a plaintiff standing, the case is not moot." *Id*. at 604.

The Court will consider these requirements in turn. The Court turns first to the question of Museboyina's standing because "Article III standing must be decided first by the court." *Id*. at 602.

a.   Museboyina Lacks Standing

Standing "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Missouri v. Biden*, 52 F.4th 362, 367 (8th Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "Standing must exist 'throughout the case because

to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Religious Sisters*, 55 F.4th at 601 (quoting *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019) (cleaned up)). "The party invoking federal jurisdiction bears the burden of establishing standing." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Museboyina has failed to carry that burden.

The Eighth Circuit Court of Appeals has explained,

> "To establish Article III standing, a party invoking federal jurisdiction must show (1) that the plaintiff suffered an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022).

*Religious Sisters*, 55 F.4th at 602. The court has explained further,

> "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339, 136 S.Ct. 1540 (quotations omitted). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409, 133 S.Ct. 1138 (emphasis in original) (cleaned up).

*Missouri v. Biden*, 52 F.4th at 368. As to the causation requirement, an "attenuated theory of injury" does not satisfy standing. *Id.* at 369. Instead, "[f]or causation to exist, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *Agred Found. v. U.S. Army Corps of Engr's*, 3 F.4th 1069, 1073 (8th Cir. 2021)). The third requirement of redressability "is all about the 'likelihood that the requested relief will redress the alleged injury.'" *Noem v. Haaland*, 41 F.4th 1013, 1017 (8th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998), with emphasis added by the appellate court); *McGowen, Hurst, Clark & Smith, P.C. v.*

13

*Com. Bank*, 11 F.4th 702, 709 (8th Cir. 2021) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.").

Museboyina cannot demonstrate that he has suffered an injury in fact. *Religious Sisters*, 55 F.4th at 602 (first requirement of standing). Indeed, in denying Museboyina's request for TRO, the Court found he had no injury:

> Although Museboyina's application cannot be approved at this time, the Court finds that, contrary to his contentions, Filing 16 at 5, his I-485 application remains pending, and he maintains his position in the queue of immigrants in his category and with his country of origin based on his priority date. Filing 18-1 at 8 (Nunez Decl., ¶ 16). Museboyina will be permitted to stay in the United States if otherwise eligible, pursuant to 8 U.S.C. § 1255(c)(2) and 8 C.F.R. § 245.2(a)(5). He has a valid Form I-765, employment authorization document that is valid through August 8, 2024, and he is eligible to apply for renewal of his employment authorization document. Such employment authorization permits employment with any U.S. employer. 8 C.F.R. § 274a.12(c)(9); Filing 18-2 at 2 (Nunez Decl., ¶ 7). Museboyina remains eligible to apply for travel authorization to depart and return to this country without affecting his pending adjustment of status applications. 8 C.F.R. § 245.2(a)(4)(ii); Filing 18-2 at 2 (Nunez Decl., ¶ 7). As a principal applicant, Museboyina has flexibility under 8 U.S.C. § 1154(j) to request to change jobs or employers to the same or a similar occupation without having to obtain a new labor certification or having to file another immigrant petition. Finally, Museboyina is eligible to seek regular renewals of his employment and travel authorization documents without paying a filing fee. 8 C.F.R. §§ 103.7(b)(1)(i)(M)(4) & 103.7(b)(1)(i)(II) (Jan. 1, 2020); Filing 18-1 at 11–12 (Parker Decl., ¶ 25). In short, he retains his current status and privileges.

Filing 22 at 9–10. Thus, Museboyina has failed to "show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical*." Missouri v. Biden*, 52 F.4th at 368 (internal quotation marks and citation omitted).

Also, as the Court previously found, Filing 22 at 10, and Defendants reiterate, Filing 31 at 16, it is pure speculation to assume that, but for the lack of available visas in September 2022, Museboyina's application would have been approved—or even adjudicated. Furthermore, the Court is not at all convinced that delay in receiving a benefit to which Museboyina has not

14

demonstrated he is entitled is an "injury." *Missouri v. Biden*, 52 F.4th at 368 (explaining that "[t]the Supreme Court has 'repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (quoting *Clapper*, 568 U.S. at 409 (emphasis in original) (cleaned up)). In short, Museboyina lacks the personal interest required for standing. *Religious Sisters*, 55 F.4th at 604 n.13 (explaining that standing requires a personal interest at the commencement of the litigation).

Also fatal to Museboyina's showing of standing is that his attenuated theory of injury does not satisfy the causation requirement. *See id.* at 369 (explaining the causation requirement). This is so, because any injury to Museboyina is not fairly traceable to any challenged action of Defendants but is the result of the independent actions of a third party, the United States Congress, not before the Court. *Id.* As Defendants argue, neither USCIS, nor DOS, nor the Court can issue visas contrary to limits set by Congress in 8 U.S.C. §§ 1151–1153. Filing 31 at 2, 17–18. Similarly, Museboyina cannot meet the standing requirement of redressability because there is simply no likelihood that the requested relief will redress the alleged injury. *Noem*, 41 F.4th at 1017 (explaining the redressability requirement); *McGowen, Hurst, Clark & Smith, P.C.*, 11 F.4th at 709 (also explaining that redressability must be likely). This is so precisely because it is beyond the power of this Court to order USCIS or DOS to take actions contrary to governing statutes. What Museboyina asks the Court to do is precisely what the standing requirement is designed to prevent, that is, using the judicial process "to usurp the powers of the political branches." *Missouri v. Biden*, 52 F.4th at 367.

Because standing is lacking, this Court lacks subject matter jurisdiction over Museboyina's claims. *Id.* His claims must be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

b.  Museboyina's Claims Are Also Moot

Notwithstanding Museboyina's lack of standing, the Court turns to consideration of standing's "close cousin," mootness. *Religious Sisters*, 55 F.4th at 604 n.13 (internal quotation marks and citation omitted). Again, "a case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Davis*, 922 F.3d at 870 (quoting *Already, LLC*, 568 U.S. at 91).

Because any injury Museboyina has suffered or will suffer is not caused by USCIS or DOS, but by Congress, not only does Museboyina lack standing to demand an order of the Court requiring adjudication and granting of his I-485 Application at this time, but he lacks standing to demand such an order at any time in the future while this action may be pending, rendering his case moot. *See Religious Sisters*, 55 F.4th at 601 ("Standing must exist 'throughout the case because to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting *Schumacher*, 912 F.3d at 1105 (cleaned up))); *id.* at 604 n.13 (explaining that a case is moot if the personal interest required for standing does not continue throughout the existence of the litigation).

Thus, Museboyina's claims are also subject to dismissal for lack of subject matter jurisdiction because they are moot. Fed. R. Civ. P. 12(b)(1).

### C.  Dismissal Is Without Prejudice

Not only does this Court lack subject matter jurisdiction over Museboyina's claims, but it appears that no court would have subject matter jurisdiction over his claims. That circumstance would seem to suggest that dismissal should be with prejudice.

Nevertheless, the Eighth Circuit Court of Appeals has repeatedly said "[a] district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction

16

is absent." *Dalton v. NPC Int'l, Inc*., 932 F.3d 693, 696 (8th Cir. 2019) (quoting *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)); *see also Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011) (modifying jurisdictional dismissal to be without prejudice). Other United States Courts of Appeals have said much the same. S*ee e.g., McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case'"); *Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice").

The Court notes that there may be unique situations where dismissal with prejudice for lack of subject matter jurisdiction might be appropriate. For example, the Ninth Circuit Court of Appeals reasoned that a district court did not abuse its discretion in dismissing an action under the Federal Tort Claims Act (FTCA) with prejudice for lack of subject matter jurisdiction because "the bar of sovereign immunity is absolute: no other court has the power to hear the case, nor can the [plaintiffs] redraft their claims to avoid the exceptions to the FTCA." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). More recently, the Supreme Court has recognized that "[o]rdinarily a court cannot issue a ruling on the merits 'when it has no jurisdition' . . . But where, as here, pleading a claim and pleading jurisdiction entirely overlap, a ruling that the court lacks subject-matter jurisdiction may simultaneously be a judgment on the merits . . . ." *Brownback v. King*, 141 S. Ct. 740, 749 (2021).

This may be a case where dismissal with prejudice would be warranted. However, in the absence of controlling authority directly addressing this situation the Court will follow the Eighth

17

Circuit's general rule that dismissal without prejudice is appropriate. *Dalton*, 932 F.3d at 696. Still, no leave to amend to reassert these claims will be granted because the Court does not see how they can be repleaded to avoid the "case or controversy" problem. *See U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 449 (8th Cir. 2005) ("Futility is a valid basis for denying leave to amend").

### III. CONCLUSION

Subject matter jurisdiction requires a "case or controversy." *Heights Apartments, LLC v. Walz,* 30 F.4th 720, 726 (8th Cir. 2022) ("Article III of the Constitution limits [federal courts'] consideration to cases and controversies existing throughout all stages of litigation."). There is no "case or controversy" if a party lacks "standing." *Spokeo*, 578 U.S. at 338; *Religious Sisters*, 55 F.4th at 601. Likewise, there is no "case or controversy" if a case is "moot." *Davis*, 922 F.3d 868, 870. Museboyina lacks "standing" and his claims are "moot," so dismissal for lack of subject matter jurisdiction is required. Fed. R. Civ. P. 12(b)(1).

Upon the foregoing,

IT IS ORDERED that this case, in its entirety, is dismissed without prejudice for lack of subject matter jurisdiction.

Dated this 1st day of February, 2023.

BY THE COURT:

s/ Brian C. Buescher
United States District Judge